Public Company Limited. Mr. Greenberg. May it please the Court, Gary Greenberg with Ms. Hal Hirsch. Your Honor, we would ask for three minutes of rebuttal if we would. Granted. Thank you. The first point I want to address is our position that the District Court, in its unpublished decision, committed error and abused its discretion in not allowing jurisdictional discovery. I want to address first the general jurisdiction issue, and then I will address discovery as it relates to specific jurisdiction. Let me start. So I take it by what you just said, that you actually are pursuing a general jurisdiction? Absolutely, Your Honor. Okay. Absolutely. And we submit, Your Honor, that the refusal, the failure of the District Court to allow jurisdiction, general jurisdiction discovery, given what was in front of the Court, it was a clear abuse of discretion. And I just want to go over what was... Are you seeking discovery also on the other theories as well? Yes, Your Honor. Because that was an issue? Yes. Yes. In terms of specific jurisdiction. Okay. Now, you've already got, you didn't tell us this in your brief, hundreds of thousands of pages of documents relating to the Aremis soft fraud. You've had a deposition. You've got a civil enforcement action filed by the SEC. You've got documents from Aremis soft, its principles, the company's banks in a number of jurisdictions. You've got a coordination agreement with the U.S. Department of Justice, etc., etc. You have an awful lot of stuff that you've gotten. Your Honor, what we have received as it relates to the record appendix, the bank has refused to provide us with even its own records, Aremis soft's records. But you are the successor to Aremis soft. Well, Your Honor, you may want to tell the bank that, because the bank is... You have that stuff. You have Aremis soft records. Your Honor, we do not have, as they have themselves stated. With respect to the specific jurisdictional request, what we have been presented is approximately two and a half inches of paper. Okay. That's what was produced in the United Kingdom. Okay. In Cyprus... Well, aside from what was produced, what do you have? Your Honor, what... Anything of zero, basically, in terms of... We have very, very little. What we have is, we know the following, Your Honor, and this was in front of the district court. And again, remembering what the test is. The test is, is there a reasonable possibility or possibility for additional forum contacts? Number one, we have, we have... It was a large international bank that had for 16 years, for 16 years, Your Honor, it had an office in New York City, less than 10 miles from the forum. An office which was dedicated to servicing the Greek-American community in the United States. It had a representative office in New York from 1992 to 2008,  But we're here for New Jersey. We're here for personal jurisdiction in New Jersey. Absolutely, Your Honor. And as it relates to general jurisdiction, if you look, the district court's opinion, which was candidly an airbrushed opinion, if you look what the district court didn't even look at, there was a 2004 examination in the bankruptcy proceeding. This is before there was a lawsuit. If you look at the record appendix, page 756, you will see that the head of that representative office, this again is an office that existed for 16 years, less than 10 miles from the forum. Not even referenced in the district court's opinion. He states, he states, Your Honor, that that office was used to provide loans for residents who wanted to buy property in Cyprus. They opened accounts from that office. They wired money from that office. That they participated in Greek events. In fact, he states that he was a member of the Cyprus Federation. If one looks up the Cyprus Federation, you'll see a 201. You have got, I'm going to try to focus you on New Jersey. Yes, Your Honor. Let me ask you some questions about New Jersey. First of all, is there any evidence, anything at all, that that representative office had any dealings in New Jersey? Yes, Your Honor. Where? What? If you, Your Honor, if you look at the page 756, is the examination in the 2004 exam, this again predates the suit. It's the head of the office. In that examination, what he states is that office was engaged in soliciting business throughout the United States. I keep asking you about New Jersey. Your Honor. Because the district judge ruled personal, no personal jurisdiction in New Jersey. Okay. Your Honor. The Aramisoft accounts with the bank were opened in Cyprus, were they not? Not Poyadzis' accounts, Your Honor. That page I recited, that Mr. Poyadzis was located, the CEO of the company, headquartered in New Jersey. Mr. Poyadzis is located in the United States. If you look at that page. I'm asking you, where were the accounts opened? Well, the Aramisoft accounts were opened in Cyprus. Mr. Poyadzis' accounts. Were they opened, I don't want to hear about him. Were they opened by mail, by telephone, over the Internet, in person? Your Honor, we don't know. I assume they were opened in person, but I don't know. And the principals were in Cyprus when the accounts were opened. No, Mr. Poyadzis, Your Honor, was in the United States. Well, your reply brief at page four said the principals were in Cyprus when the accounts were opened. Your Honor, when you talk about the Aramisoft accounts, Mr. Poyadzis was headquartered in the United States. He was the CEO. I can't tell you whether or not he was residing in the United States or in Cyprus when the Aramisoft account was opened. I can tell you, though. I'm just telling you that you did tell us that the principals were in Cyprus when the accounts were opened in Cyprus. Now, did Aramisoft receive paper copies of its account statements? Your Honor, we don't know. With the bank? Your Honor, we don't know. And that's what you're looking for? Your Honor. You want Aramisoft. You're the trustee for Aramisoft. Your Honor, as we've said, Your Honor, there are limited documentation which we have received. We sought documentation in Cyprus, which the court refused. If you look in the record appendix, you will see that they claim under Cyprus law they don't have to give documents to even a representative because we're not Aramisoft. What do you do with Mr. LoSallo's statement at 491 of the joint appendix? Quote, The attorneys for the Aramisoft Trust in New York have amassed hundreds of thousands of pages of documents relating to the Aramisoft fraud. That's correct, Your Honor. That's absolutely correct. That's correct. We have lots of documents, Your Honor. What is this one inch?  That's what they produced, Your Honor. This was a, Your Honor, we are dealing with. Maybe they produced one inch or two and a half. You've got hundreds of thousands of documents. Not as it relates to Leakey, Your Honor. Your Honor, this is. Relating to the Aramisoft fraud. What is more specific than that? Your Honor. Let's go back to New Jersey. Yes, Your Honor. How did Lockheed, the bank, expressly aim its conduct at New Jersey? Now, were account statements sent to New Jersey? Your Honor, we don't know. We do not know. And I don't suggest that they were. How did it aim New Jersey? The following, Your Honor. Number one, it had a multi-year relationship, a depository relationship with a New Jersey headquartered company. Number two, Your Honor, as Your Honor is aware, in that account, which gave rise to continuing rights and obligations, that account was used to engage in the looting of the company. Number two, Your Honor. You're not telling us what it did in New Jersey. Your Honor, they accepted New Jersey collateral. The stocks are 776,000 shares of. That was dumped in Cyprus. That was turned over in Cyprus. Your Honor, it's a New Jersey headquartered company with a New Jersey transfer agent. Okay. Your position is, I think it has to be, that the bank is subject to personal jurisdiction anywhere any depositor is located. Because all you have, as far as I see, with a New Jersey connection, is the fact that you're a depositor. Actually, Your Honor, no. We have far more than that, Your Honor. All right. Tell me specifically what contacts you have with New Jersey. Specifically. The bank. Give me one. With New Jersey. New Jersey stock, New Jersey transfer agent, which was used to collateralize the loans to Mr. Poyajas. Mr. Poyajas is headquartered in New Jersey. The bank made tens of millions of dollars of loans based upon the protections afforded by New Jersey law. It was those loan proceeds, Your Honor, that were used by Mr. Poyajas to engage in his breaches of fiduciary duty. Our point, Your Honor, and again, I ask that the likelihood, forget about the possibility, the likelihood that through discovery we can establish additional contacts. This is both with respect to general jurisdiction and specific. Your Honor, this is a bank that was in a strong, for 16 years, according to their own representatives. You have, I was told years ago when you're doing appeals, read the red brief first. I read the blue brief first, and I was stunned when I got to the red brief to find out all the litigation that the trustees have been party to here. They've sued the bank, the bank already in Cyprus. They've sued the main litigation there. They've got hundreds of thousands of pages of documents, and you still come up in the complaint with almost nothing. Your Honor, that's not correct. In Cyprus, there is a suit, there was a lawsuit against Mr. Cipriano, who is the- That's one of the many lawsuits. Yes, Your Honor, and we sought documents which were denied to us. We filed suit in the United Kingdom, okay, seeking documents because we had a worldwide freeze order. We received two and a half inches. We got a response, Your Honor, which is in the record. I don't have the citation, but we got a response that under Cypriot law, we don't have to produce a remiss office records to a representative because you're not the borrower. Go ahead. I'm sorry. What do you need that you don't have? What would you, I mean, just give me something specific. Account statements? Your Honor, as it relates to general jurisdiction or as it relates to specific jurisdiction? Any jurisdiction. Any kind of jurisdiction. As it relates to general jurisdiction, Your Honor, the number of loans that they made into the state of New Jersey during the period of time. Your Honor, we have testimony from the head of the office that says we made loans, that we solicited business, that we wired money. Your Honor. In New Jersey? No, Your Honor. No, you see, you keep going back to the United States. Your Honor, we're- We're talking about New Jersey. The issue is, Your Honor, whether or not there's a possibility if we're allowed that discovery and we didn't have it in this case, whether there is a possibility that those individuals will say, sure. And, Your Honor- Doesn't it sound like a phishing exhibition? No, Your Honor, especially not when you see that he says I was a member of the Cypriot Federation and you look up and you see what's the area code? It's a 201 area code. No phishing exhibition. With all due respect, Your Honors, that I would submit that if given discovery, you will find that this is a bank that engaged in continuous activities in New Jersey and elsewhere for many, many years, Your Honor, making loans, helping people buy property, wire money. And, Your Honor, if we're not given discovery, okay, to prove general jurisdiction or specific jurisdiction, what you've done and what, in fact, the district court is to countenance behavior, which is you're not entitled to- Well, the Southern District of New York, you had a parallel case in the Southern District of New York that dismissed and formed non-convenience. Which is a total-exactly, Your Honor. And that issue was raised here, just not addressed by the district court. That's right, Your Honor, but with all due respect, we believe that Judge Pisano implicitly denied it because this is-the Judge H's decision was pre-Went decision, and we are suing in our home forum, Your Honor. So we believe that that issue-but you are right. That case was decided on forum non-grounds. So what you're looking for in discovery is you think there's continuous activity in New Jersey. Yes. But we don't have anything to that-we don't have any evidence to that effect. Your Honor, we have the head of the New York office saying that we- United States, United States. Your Honor, it defies common sense not to recognize the number of Greek Orthodox churches in New Jersey, the significant Greek population. One needs only look at the- Wait a minute. Because there's a Greek Orthodox church, they were money laundering? Your Honor, I didn't say- They were money laundering. Your Honor, that's not our position. Our position is that they engage in continuous and systematic business in New Jersey, and that given discovery, which we believe we're entitled to, that there is at least a possibility under Third Circuit standards that we can demonstrate that. Similarly, Your Honor, with respect to the specific jurisdiction, among what we've said, and also justifying jurisdictional-specific jurisdictional discovery, is one cannot be unmindful of the fact that we are representative-assuming a representative capacity, you can look at the actual production, which is recited in our papers, and we are entitled, again, what the standard is. The actual production of two-and-a-half inches versus what we know exists, the existence of a fire, the existence of the stone walling. Can I ask what the two-and-a-half inches is exactly? Pardon? What is it? What's in the- That's what they gave us. What do you have? What's in it? Some bank statements, Your Honor. Some bank statements. Some bank statements. Again, if I didn't feel strongly that the general jurisdictional issue, one would have to be, with all due respect, it defies common sense to not believe that a business that exists, a bank that exists to service the United States, the population that's existing in New York City- Should not have personal jurisdiction. No, Your Honor. That is not engaged in soliciting business. There's certainly the possibility, Your Honor, that that exists, and that's the standard. I don't know. We'll get you back in rebuttal. Thank you, Your Honor. You've had more time than your initial was allowed, but you've had a lot of questions.  My name is Todd Fishman from the law firm of Allen & Overy. I'm here on behalf of the Appalese, Marfin Popular Bank. Let me just begin by saying that this is a case of failed forum shopping. As the panel has noted, District Judge Hayton, the Southern District of New York, had previously dismissed three very similar actions on behalf of the trust against three of their banks. He wrote a very thorough opinion on Forum 9 grounds, and it was, what, three, four years before Judge Pisano ruled. Indeed, when you argued this case, most of the argument went on Forum 9 or Statute of Limitations grounds. I was surprised to see, not surprised, but I would have expected the easier way out would have been to decide your motion would have been to go on Forum 9 grounds. I agree, Your Honor. We had pointed out, and we pointed out to this panel, the Sinochem decision by the Supreme Court that basically said the District Court, at the first instance, should go to Forum 9 because, typically, discovery is not warranted in those instances. Clearly, given the record in this case, as well as the prior track record with the trust in the Southern District of New York, we think that that would have been the easier way to go. Obviously, we still think that Judge Pisano's decision on personal jurisdiction is on very strong grounds here, especially in light of the Eurofins decision that was issued by this court almost about a month ago where you had an intellectual property contract where all the services pursuant to that contract, very similar to this case, were issued in a foreign jurisdiction. In Eurofins, it was in France. Here, it's in Cyprus. It was a clear case of lack of personal jurisdiction. Clearly, in the prior decision by this circuit in the Mellon Bank v. DeVeronica Brothers, the mere fact that an out-of-state defendant contract with a resident of the forum state alone does not give ground for personal jurisdiction in the home forum. Would you concede that if this were a case where the bank had simply converted the funds of Arimisoft that there'd be personal jurisdiction in New Jersey? I don't believe so. All of the transfers that are alleged in this complaint took place for the most part through Cypriot bank accounts of the bank or in Greek bank accounts. And the critical point here is what is the law? What was the expectation of the bank here? All the transfers were made through Cyprus, through their Cyprus operations, through Cyprus accounts, which were all regulated by the Central Bank of Cyprus. In the prior Bordier decision, which would also work by the trust that had gone up to the Third Circuit and had been reversed on Sousa grounds, Bordier was a Swiss bank. There was a specific finding, given the contacts with the Swiss forum, that Swiss law would apply. So I think in that instance, even if there is some proof of money laundering, given the gravity of the contacts, which all took place out of the United States and predominantly in Cyprus, I don't think that gets them to where they need to go on personal jurisdiction. Going to Mr. Greenberg's ground on the jurisdictional discovery, there was a real lack of symmetry in this case as it has progressed as to what they are suing for lack of personal jurisdiction and what grounds they are seeking discovery on. If the panel goes to Paragraph 15 of the complaint, the two theories of personal jurisdiction that they plead were a sex test under Calder v. Jones, which is limited by this circuit by IMO industries, and the Koch and Spears theory. Clearly, under either of those theories, there is no personal jurisdiction grounds. And I don't think that they contest that because in their reply brief, they don't seek to support any of those. Now he's talking about general jurisdiction. Right. The first time general jurisdiction appears is in their opposition paper on their motion to dismiss. To the motion to dismiss. And for purposes of jurisdiction, they need to reduce, even on a prima facie basis, facts that would tend to approximate physical presence in the form. And I don't see how they have to present allegations that suggest with reasonable particularity the possible existence of the requisite context. That's right. And why haven't they done that? Because there has been nothing but speculation. Well, I mean, but in the procedural posture here, I mean, their successor and interests are saying we don't have documents at all, we're relying on you, you won't give them to us. Why is it unreasonable to permit them to at least give it a shot? Well, I think it's unreasonable because there needs to be some basic factual predicate that will act as a fulcrum under Toys R Us and most recently in your offense to get them to jurisdictional discovery. It's not just a fishing expedition that you can speculate on what might occur that gets you to jurisdictional discovery. And specifically in the portion of the 2004 deposition that was taken, I remind you, pre-complaint. What page are you on? Sorry, I'm referring to it's page JA756 of the record. What the head of the representative office testified, and this is on page 12, we have them to open their accounts on their way back to Cyprus. We give them information from Cyprus, how to wire their money from the banks here and over there, just information, and this is critical. We didn't solicit any other kind of business. What page is that again? It's JA756, and there are four pages of the deposition transcript specifically referring to page 12. And it's important that the head of the office said that we don't solicit because under federal banking regulations, which we cited in our brief regulation 10, a representative office cannot engage in banking activity. So the type of activities that they are speculating might give rise to some physical presence in New Jersey cannot exist by virtue of federal statute. They were not engaging in the business of banking in the United States. The purpose of the representative office was to make available customers for their Cyprus operations what products are available in Cyprus, and that's what their deposition said. Well, if they make loans here, as your adversary points out, is that enough to get them jurisdiction? Respectfully, I don't think there's any justification in this record for the fact that the bank made loans. What is alleged in the complaint and what is specifically the subject of this lawsuit are accounts opened in Cyprus and transfers that were allegedly made through those accounts in Cyprus, all of which were administered by the bank's Cyprus-based employees, all under the regulation of the Central Bank of Cyprus. If the panel doesn't have any further questions, I'm happy to waive the rest of my time. Thank you so much. If I may, I think it was just the basic factual predicate as it relates to specific jurisdiction. New Jersey headquartered, New Jersey collateral, New Jersey transfer agent. They sought the protection of New Jersey law. Read what they just read on page 756. They said, Mr. Pafitis, this is on the examination. He says basically to offshore loans, open accounts for those to verify their signatures because we have lots of documents to send to Cyprus like we did with Royce Poyadis. They opened the loan for Mr. Poyadis, which was used to fuel his breaches of fiduciary duty. Mr. Poyadis that had New Jersey headquartered company. No contact existed between Poyadis and Cipriano and New Jersey. Well, they had offices in New Jersey. Mr. Cipriano spent most of his time abroad, but they had offices. That was where their headquarters were. No, no, no, you're talking about a renaissance. Well, Mr. Poyadis and Mr. I'm talking about them as individuals. Well, when you say as the CEO of the company. We don't really even have them in New Jersey. You're right. This was the principal executive office. It wasn't. It wasn't. I mean, Judge Pisano found because of the posture of the case that it was for purposes of this. You're right. But we don't know. They even have a New York office. You have three different offices listed, London, New Jersey, and New York, just within a few pages of appendix. The issue is, is it foreseeable? Is it fair when a company, a bank, a foreign bank, takes New Jersey collateral for a New Jersey headquartered company, relies upon a New Jersey transfer agent, and the loan would. Where was the collateral, quote, unquote, taken? The stock was transferred from the United States. The original certificates were actually sent from the United States to Lakey Bank. In Cyprus. In Cyprus. But the whole point was they had to rely upon the protections, the full faith and credit of New Jersey law in order to enforce their rights. This was tens of millions of dollars. Your Honor, and with respect to general jurisdiction, because that really addresses to suggest that we don't show a possibility of additional contacts on specific general jurisdiction, the head of the office talks about everything they've done. They provide loans out of this office. They open bank accounts. When was this case filed in the district court? March of 2009. Your Honor, and there's been, as counsel has said, there's been no discovery. Again, in this case, focused on jurisdiction. You know, it is true we have lots of documents, lots of documents relating to Bank of Cyprus, relating to Lloyds Bank. As your Honors may know, it is not easy when you are dealing with foreign banks and when they want to play, when they want to not give you documents. They have been very successful in this case to suggest under what we believe to be is long established Third Circuit precedent that we have not shown a reasonable possibility based upon all the indicia that we've said. But that's the question. Is there any particularity at all here? Your Honor, I can't get any more specific than say it's New Jersey collateral, it's a New Jersey transfer agent, it's a New Jersey headquartered company,  I ask rhetorically, what do you think? Before individuals will say, when they're asked what their activities were for 16 years, what do you think? I respectfully submit that what they're really concerned about is that this bank engaged in systematic and continuous what is banking activity. And to suggest they didn't do any business in New Jersey, when on its face he says, I was a member of the Philosophic Committee for the Cypress Federation and on behalf of the bank I was giving lots of donations. And one simply has to look at where they're located. And one will see it's a 201 area code, as I said before. With all due respect, we would ask, we believe we satisfy the prima facie basis test as it relates to specific jurisdiction. We certainly believe we're entitled to jurisdictional discovery as it relates to general jurisdiction and specific jurisdiction. Thank you, Your Honor. We will take the case under advisement. The clerk will adjourn the court. Thank you, Your Honor. Thank you, Your Honor.